**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,
Plaintiff,

v.

SELENA PEREZ,
Defendant.

Case No. 15-cr-02874-BAS-1

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (ECF No. 60)**

Defendant Selena Perez files a Motion for Compassionate Release seeking a modification of her 100-month sentence to a time served sentence in light of the risk she faces from COVID-19. (ECF No. 60.) In the alternative, Ms. Perez requests immediate release to home confinement. (*Id.*) The Government opposes. (ECF No. 62.) For the reasons stated below, the Court **DENIES** the Motion.

## I. BACKGROUND

On October 9, 2015, Ms. Perez attempted to enter the United States accompanied by her 13-month-old daughter. (Pre-sentence Report ("PSR") ¶ 4, ECF No. 34.) Agents found 59.43 pounds of methamphetamine in the gas tank of the car Ms. Perez was driving. (*Id.*) She was under the influence of methamphetamine at the time of her arrest.

Ms. Perez, who is currently 39 years old, has a lengthy criminal history, leading to a criminal history category of VI. (PSR ¶ 41.) The vast majority of this criminal history, which includes two felony car theft convictions and possession of identification documents belonging to others, was due to her methamphetamine use. (PSR ¶¶ 31–39.) On February 6, 2018, the Court sentenced Ms. Perez to 100 months in custody followed by three years supervised release. (ECF Nos. 46, 51.)

Ms. Perez has served about 56 months of her 100-month sentence. She is currently being housed at FCI Waseca, which has reported one case of COVID-19 among its inmates. (Government's Response 9:8–10, ECF No. 62.) If she were to get the coronavirus, Ms. Perez claims she would be at high risk because she suffers from asthma. (Motion 3:8–15, PSR ¶ 68.) The Government points out that Ms. Perez's medical records classify this as "mild intermittent asthma." (Government's Response 8:17–18, Ex. 7.) On February 11, 2020, Ms. Perez reported to medical authorities that her last asthma attack was six years ago. (*Id.*, Ex. 7, at 37.) She noted at the time that she did not need or want a steroid inhaler. (*Id.*) However, on May 9, 2020, just after submitting her compassionate release request to the Bureau of Prisons ("BOP"), Ms. Perez reported that she was having difficulty catching her breath and that wearing her mask makes it difficult for her to breath. (*Id.* at 22.) The nurse reported that Ms. Perez was able to breath better once her mask was removed. (*Id.* at 23.) The nurse recommended that Ms. Perez return to her bunk, rest, and use an inhaler as needed. (*Id.*) The BOP has supplied Ms. Perez with an albuterol inhaler, which is only to be used as needed to "prevent/relieve asthma attack." (*Id.*)

While she has been in prison, Ms. Perez has completed her GED, has been participating in RDAP, the BOP's drug treatment program, and has been working. (Motion, Ex. 1.) However, Ms. Perez has also been disciplined four times while she has been in custody for "assaulting without serious injury" (August 2019), exchanging money for contraband (February 2018), being insolent to staff (July 2017), and abusing phone privileges (May 2017). (Government's Response 8:4–11.)

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* In other words, Ms. Perez must fully exhaust her administrative remedies from the Warden of the facility where she is being housed before she turns to the Court for relief.

"Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *United States v. Ng Lap Seng*, __ F. Supp. 3d __, 2020 WL 2301202, at *6 (S.D.N.Y. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id.* This Court agrees with the vast majority of courts in this circuit that have found such an exhaustion to be mandatory. *See, e.g.*, *United States v. Stanard*, No. CR 16-320-RSM, 2020 WL 1987072, at *4 (W.D. Wash. Apr. 27, 2020); *United States v. Otero*, No. 17-cr-879-JAH, 2020 WL 1912216, at *3 (S.D. Cal. Apr. 20, 2020); *United States v. Allison*, No. CR 16-5207-RBL, 2020 WL 1904047, at *2 (W.D. Wash. Apr. 17, 2020); *United States v. Fuller*, No. CR 17-0324 JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020); *United States .v Aguila*, No. 2:16-0046-TLM, 2020 WL 1812159, at *1 (E.D. Cal. Apr. 9, 2020); *United States v. Carver*, No. 4:19-CR-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020).

Ms. Perez maintains that she has exhausted her administrative remedies because she filed a request with the Warden on April 29, 2020, which was denied on May 22, 2020. (Motion, Exs. A, C.) However, Ms. Perez presents no evidence that she attempted to appeal her denial. Thus, she has not fully exhausted her administrative remedies. Ms. Perez argues that, because 30 days have expired since she initially filed her request, she has exhausted her administrative remedies, regardless of the response from the Warden.

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to continue to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapses and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies. 18 U.S.C. § 3582. In the interpretation urged by Ms. Perez, all a petitioner has to do is file a request with the Warden and wait 30 days. The subsequent action or inaction of the Warden is irrelevant.

In *United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2020 WL 6050264, at *2–4 (D. Ariz. Nov. 8, 2019), the District Court in Arizona analyzed the two interpretations of "the lapse of 30 days" language in Section 3582. In the first interpretation, urged by Ms. Perez in this case, the simple passage of 30 days after making the request to the Warden is sufficient to constitute exhaustion of administrative remedies. Indeed, Congress might have decided against requiring every defendant to pursue a potentially lengthy administrative appeal process when talking about the possibility of imminent death.

However, this interpretation would make the first requirement, that a petitioner "fully exhaust[] all administrative remedies," largely surplusage. The full exhaustion is unlikely to occur in just 30 days. Therefore, all that is practically required under the first interpretation is that a petitioner file a request with the Warden and wait 30 days. No further exhaustion of administrative remedies would be necessary. Furthermore, the word "lapse," as noted by the Arizona District Court, "often carries with it a connotation of a

failure to act." *Id.* at *3. Thus, under this second interpretation, a defendant could "go directly to the district court if a warden is not responsive to a request but, if a warden *does* act within 30 days, the defendant would be required to pursue an administrative appeal." *Id.* This Court agrees with *Weidenhamer* that the second interpretation makes the most sense. The purpose of the "lapse of 30 days" language is to give a defendant an alternative if attempts to exhaust administrative remedies appear futile.

Therefore, Ms. Perez has failed to fully exhaust her administrative remedies as required under § 3582. Although this Court finds that such exhaustion is mandatory, the Government may waive the exhaustion requirement by asking the court to consider the substantive merits of a defendant's motion. *Ng Lap Seng*, 2020 WL 2301202, at *7. In this case, the Government has submitted on the issue of exhaustion of administrative remedies and addressed solely the substantive issues. (*See* Government's Response 1:23–25, 9:6–8.) Therefore, the Court finds the Government has waived the exhaustion requirement and turns instead to the substantive issues of whether Ms. Perez has demonstrated "extraordinary and compelling reasons" for her release and whether the 18 U.S.C. § 3553(a) factors support release.

**B. Support for Defendant's Request**

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

Ms. Perez argues that the coronavirus and her asthma constitute "extraordinary and compelling circumstances." It is now axiomatic that the virus causing COVID-19 is a serious virus, both contagious and causing death to a certain group of people. Those in custody, by virtue of their close proximity, are at greater risk of contagion. Yet that cannot mean that all individuals in custody, regardless of their exposure, risk, or criminal background, should be released under the "extraordinary and compelling" reasons section

of the compassionate release provisions. *See United States v. Eberhart*, __F. Supp. 3d__, 2020 WL 1450745, at *2 (N.D. Cal. 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release."); *see also Riley v. United States*, Nos. C19-1522 JLR, CR 14-011 JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020) (same). Instead, the assessment requires a careful consideration a defendant's background, risk to the community upon release, risk of exposure, and risk of death if the virus is contracted. As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, __F. Supp. 3d__, 2020 WL 1673440, at *3 (D. Or. 2020).

In this case, it does not appear that Ms. Perez's risk of exposure at FCI Waseca, at least at this point in time, is that great. Only one inmate has contracted the disease. And the Government provides information about the extensive efforts made by the BOP to try to keep the virus from spreading. (Government's Response § I.)

Additionally, this Court agrees with the courts cited in the Government's brief that have held that "mild intermittent asthma" does not create such a high risk that, if Ms. Perez contracts the disease, it warrants her release. (Government's Response 15 n.8 (citing *United States v. Anguiera*, No. 11-CR-116S (1), 2020 WL 3424530, at *5 (W.D.N.Y. June 23, 2020); *United States v. Miles*, No. 2:17-cr-00127 KJM, 2020 WL 3256923, at *3 (E.D. Cal. June 16, 2020); *United States v. Abram*, No. 15-20656, 2020 WL 3097259, at *2 (E.D. Mich. June 11, 2020); *United States v. Mascuzzio*, No. 16-cr-576 (JFK), 2020 WL 3050549, at *3 (S.D.N.Y. June 8, 2020); *United States v. Wheeler*, No. 19-cr-00085 (ESH), 2020 WL 2801289, at *3 (D.D.C. May 29, 2020); *United States v. David*, No. CR17-04 RSM, 2020 WL 2526568, at *4 (W.D. Wash. May 18, 2020); *United States v. Davis*, No. 18-cr-10013-JES-JEH, 2020 WL 2488574, at *4 (C.D. Ill. May 14, 2020); *United v. Miller*, No. 18-cr-30034, 2020 WL 2093370, at *3 (C.D. Ill. May 1, 2020)).) Ms. Perez is 39 years old; therefore, her age does not place her at greater risk from the virus. Furthermore, her most recent attack—before the May 9, 2020, reported breathing difficulty—was six years

ago. The incident on May 9, 2020, appeared to be remedied by removing her mask and resting. It does not appear that her asthma is anything more than as reported: "mild and intermittent." Therefore, the Court finds Ms. Perez has failed to demonstrate extraordinary and compelling reasons for her release.

Additionally, the Court considered most of the cited § 3553(a) factors when it sentenced Ms. Perez originally. The only additional factors the Court considers is that Ms. Perez is participating in drug treatment, has completed her GED, and is working. The Court is extremely encouraged by the progress Ms. Perez has made, particularly with her participation in the RDAP program. However, until she completes the program, the Court is concerned that her likelihood of recidivism, given her past criminal record, is high. Additionally, Ms. Perez does have a history of disciplinary infractions while she is in custody. Therefore, the Court concludes that the § 3553(a) factors also warrant against immediate release.

Finally, to the extent Ms. Perez seeks release on home confinement, this Court lacks jurisdiction to transfer her to home confinement, even under the compassionate release provisions. The Attorney General, and, by designation, the BOP, has the exclusive authority to determine custody placements including home confinement. *Reeb v. Thomas*, 636 F.3d 1224, 1226–28 (9th Cir. 2011). "While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) (quoting *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984)). To the extent Ms. Perez is asking to be released on home confinement, she must direct this request to the BOP.

//

//

//

//

## III. CONCLUSION

For the reasons stated above, Ms. Perez's Motion for Compassionate Release and for immediate designation to home confinement (ECF No. 60) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: July 6, 2020**

Cynthia Bashant

**Hon. Cynthia Bashant**
**United States District Judge**